## GREGG COMPANY, LIMITED,

### *v.*

## UTUADO SUGAR COMPANY.

---

San Juan, Equity, No. 898.

TAXES PAID OUT OF PROCEEDS OF SALE.

Intervention—Previous Rulings.

    1. An intervener comes into the case at the time of the intervention, subject to previous rule.

Tax Lien—Equity.

    2. It is inequitable for the court to prevent the enforcement of a legal remedy and afterwards declare that this had resulted in the loss of a lien.

Doing Equity—Taxes.

    3. If the court keeps alive a quasi lien for the protection of taxes, it may require the quasi sovereign to do equity by reducing the assessment.

Gregg Co. v. Utuado Sugar Co.

Surcharge—Law of the Case.

> 4. The same might be true of surcharges, but in the case at bar the court had permitted them to become the law of the case.

Opinion filed December 4, 1919.

*Mr. Edmund Block* for People of Porto Rico.

*Mr. H. G. Molina* for Banco Territorial y Agricola.

HAMILTON, Judge, delivered the following opinion:

In this receivership case the People of Porto Rico have from time to time filed petitions seeking the payment of taxes upon the mill and other property of the Utuado Sugar Company held in the hands of receivers of this court, and orders have been made from time to time directing payment, as on May 4, 1914, November 30, 1914, May 29, 1915, December 6, 1915, and August 2, 1916. The difference between the previous applications and the present one is that the property in question has been sold and delivered to the purchaser, and the point now is whether taxes unpaid shall be paid out of the proceeds. The court previously directed that $5,000 of the purchase price be set aside to cover taxes, but no absolute appropriation has been made from the fund. The present application filed August 25, 1919, claims a balance due for taxes of $5,060.36, including surcharges.

The matter was referred to special master Aguayo, who filed a report September 30, 1919, finding a balance due of $2,784.87 to be charged pro rata to the products of the mortgaged and un-

Gregg Co. v. Utuado Sugar Co.

mortgaged property in court. To this the People of Porto Rico filed exceptions, which have been withdrawn, and the matter comes up on exceptions by the Banco Territorial y Agricola, setting up different grounds of objection. Such of those that are material will now be considered.

1. Whether the contention of the Banco Territorial y Agricola is correct or not, that previous rulings of this court are not binding because the said Banco Territorial y Agricola has just come into the case, need not be determined. For some purposes all rulings previous to intervention must, under the general practice as to intervening creditors, be held as binding. That is to say, an intervening creditor intervenes in the case as it stands at the time of the intervention. New Equity Rule 37. Nevertheless, if an order has been made doing injustice to the subsequent intervener, and it is possible to correct it against parties still before the court without substantial injustice to anyone concerned, it would seem that this course should be pursued.

2. The Banco Territorial y Agricola does not deny that the taxes as stated are due by the defendant company, but sets up that the master holds erroneously that the proceeds in the registry of the court are subject to a lien under § 315 of the Political Code of Porto Rico, inasmuch as that lien is confined to the current and three preceding years. Cabrera, lessee of the property for previous years, was directed by the court to pay the taxes due during his lease as part of his rental, and did so in 1916 and 1917, but the Treasurer of Porto Rico applied these payments to previous years of this receivership, from 1913 to 1915, for which the taxes had not been paid. How the Treasurer of Porto Rico keeps his books is not a matter before the

XI. Porto Rico.—28.

court, but if crediting payments to earlier years than those directed to be covered by the order of court tended to keep alive a lien which otherwise would be dead, his action would not affect the parties. The taxes of 1916 and 1917 must be regarded as paid as ordered. The question, however, goes back of this. It is the duty of every court to see that property administered through its receivers pay taxes to the government. As previously held by this court, such property is in effect sequestered in the hands of the court, and certainly a court of equity will not prevent it from bearing its proper share of the public burden.

The difficulty, however, is that this is a question of conflict of liens claimed, on the one side, by the trustee of the mortgage, and, on the other, by the local quasi sovereign, the People of Porto Rico. The debt for taxes lasts until barred by the Statute of Limitations, but lasts against the defendant company, which is confessedly insolvent. The question is, Is the lien for taxes which is created by the statute for a certain period extended because the property is in the hands of the court? If it had not been in the hands of the court, there is no doubt that the People of Porto Rico would have enforced their claim, and should the People of Porto Rico be deprived of their only feasible remedy, that is, the lien, because the court prevented them from enforcing the lien? On the other hand, how can the court declare a statutory lien to exist which by the words of the statute does not exist beyond a period which has now expired?

It may be strictly true that the terms of the law declaring the tax lien cannot be added to any more than they can be diminished by the court, but it would be inequitable for the court to prevent the enforcement of a remedy and afterwards declare

Gregg Co. v. Utuado Sugar Co.

that the People of Porto Rico should suffer by the court's action. If it is inequitable to prevent enforcement of a remedy, it must, on the other hand, be equitable to enforce some equivalent. While there is, therefore, no legal right involved on behalf of the People of Porto Rico, there is an equitable right. It cannot be said that the court is estopped, for a court is never estopped; but an equity arises to grant the People of Porto Rico the equivalent of what the court in its administration of the property prevented them from enforcing for the time being.

3. There seems to be no reason why an application for the payment of taxes should not come within the ordinary principle that he who seeks equity must do equity. If this court is to hold that its custody of property for the benefit of all concerned keeps alive statutory liens for taxes after the period declared by the statute, it should not do so without the applicant doing equity. In the case at bar it seems that the assessment of the property was abated in 1915 from $272,678 to $75,000; that is to say, was assessed at very little more than one fourth of the previous return. The fact of the matter seems to be, as shown by the records in this case, that the receiver of that day did not look after the matter of taxes, and permitted an excessive valuation to continue. Whether the assessment was excessive previous to 1915 does not clearly appear, but if it was the People of Porto Rico should abate the assessment accordingly before asking payment from the fund in court. It is shown that the assessment of $272,678 was made by the officers of the company and afterwards by receiver McFie. The action of a receiver, however, is not conclusive upon the court. He is merely the agent, and if the court's agent makes a mistake the parties in interest should not suffer, provided the mistake is brought to the attention of

the court in time to correct it. If it can be agreed that the correction is to apply for the two preceding years of 1914 and 1915, the master will have no difficulty in restating the account. If this is not agreed, then he will ascertain what the correct assessment for the preceding years in question should be, and act accordingly.

4. The same principle as to doing equity might under some circumstances apply to the enforcement of the surcharge, which is the equivalent of a heavy penalty, double the legal interest, imposed for the nonpayment of the taxes in question. If the People of Porto Rico could not enforce the payment of the taxes, it might not be equitable for the People of Porto Rico to seek the legal penalty declared for nonpayment. It seems, however, that the court upon a previous occasion permitted a collection of the surcharge, and the difference between the surcharge and interest would not be very great in the application now under consideration. It might be considered that the granting of the surcharge was, under the previous action of the court, already the law of the case. It is true that the master has disallowed some surcharges, but no exception is taken to this action, and it would seem better under the circumstances not to reopen the matter.

The exception of the Banco Territorial y Agricola is sustained as far as accords with the views above expressed, but the master's report is otherwise affirmed. The matter is rereferred to the master to restate the account for taxes in accordance with the above views, and to report accordingly.

It is so ordered.